This appeal tenders but one question and that is of law. A correct decision of the question requires interpretation of Section 6 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, Dart's Statutes, Section 4396, in the light of the undisputed facts. This section, insofar as necessary hereto, reads as follows: "That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) *Page 117 
for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him".
Melvin Hall, Jr., was under contract with the Department of Highways of the State of Louisiana to do certain construction work on sections of highways in Jackson Parish, that required the hauling and spreading of pit-run gravel. The department had a lease on what is referred to as the Carrell pit in Lincoln Parish, several miles from the locus of the construction and Hall was required to procure the needed gravel from said pit. The gravel was loaded by his own dragline into trucks having a five-yard capacity, which were then driven to the locus where needed and there unloaded. The trucks made several loads per day. Hall exercised no control nor direction whatever over the owners of the trucks nor over those who drove same, beyond requiring that the gravel be delivered at designated places. They hauled when they wished and were paid by the yard.
Hall, himself, did not have the necessary number of trucks to complete the delivery of the gravel as quickly as desired and he contracted with owners of other trucks sufficient to run the number to 75 or 80. Among those so engaged to haul gravel was Rubin A. Whitman, who owned one truck. Hall authorized him to haul gravel to the limit of his capacity and agreed to pay him $1.20 per yard therefor. Rubin A. Whitman employed his younger brother, Shelby T. Whitman, to operate his truck and for his services agreed to pay him 25 per cent of gross receipts for gravel delivered. On May 5, 1948, while performing the duties of his employment, Shelby T. Whitman was fatally injured in a freak accident that involved the truck he was driving.
This suit was instituted by Mrs. Charlene Kinsey Whitman, widow of the deceased, in her own right and for the use and benefit of Charlotte Ann Whitman, age five, sole issue of her marriage to Shelby T. Whitman, to recover workmen's compensation at the rate of 65 per cent of his weekly wage, not exceeding $20 per week, for 300 weeks, plus $300 for funeral expenses.
Plaintiff's position is that Rubin A. Whitman was a sub-contractor of Hall and that the deceased, being an employee of the subcontractor, was protected under the above quoted provision of the Workmen's Compensation Law, and was included within the coverage of compensation insurance carried by Hall. Hall, Rubin A. Whitman and the insurer, Central Surety and Insurance Corporation, were made defendants. Whitman did not answer the suit nor otherwise make appearance therein. Hall and the insurer take the position that the undisputed facts repel the contention of the plaintiff. They aver that these facts reveal that Rubin A. Whitman's relation to Hall was that of an independent contractor and that the deceased was his employee and therefore, sustained no contractual relationship whatever to Hall; that neither of the Whitmans was carried on Hall's pay roll and that the insurance coverage was limited in its protection to Hall's employees.
The trial judge, in lengthy written reasons for judgment, sustained plaintiff's position and awarded judgment accordingly against Hall and his insurer in solido. The case was not put at issue as to Rubin A. Whitman. The court fixed the weekly wage of the deceased at $42.19 and applied the statutory percentage of 46 1/4 thereto in order to determine the weekly amount due plaintiff for herself and daughter.
In this court plaintiff filed a motion wherein she admits that on November 11, 1948, she married T. L. Lasyone and that under the law, from that date she thereby forfeited the right to demand and receive any part of compensation payments awarded her under the judgment. She suggests that such payments be reduced to that which her daughter is entitled under the compensation law, or 32 1/2 per cent of the weekly wage of the deceased, as fixed by the lower court, such percentage being $13.71. She also averred that she had qualified as natural tutrix of her minor daughter in the district court of Ouachita Parish *Page 118 
In this court the appellants do not seriously argue against the correctness of the lower court's judgment, but simply submit the case, so far as they are concerned, on the defense raised in their joint answers. They do, however, challenge the court's award of $300 on account of funeral expenses. They contend that under the law then in force, $250 was the limit of such expenses for which the employer was chargeable, which is true. See Act No. 120 of 1944, § 8, subd. 5, page 339.
The legal proposition involved herein is not new. It has been many times passed upon by the courts of this state and invariably the ruling has been contrary to the position taken by the appellants herein. It is immaterial under the facts of the present case and said section 6, whether the relationship of Rubin A. Whitman to Hall was that of sub-contractor or independent contractor. In either case Hall is responsible under the quoted section of the Workmen's Compensation Law to the widow and heir of the deceased employee for compensation. It is clear that Hall was the principal in the engagement with Rubin A. Whitman, who was the contractor thereunder, and that the deceased was the employee of the contractor. The existence of these relationships meets fully the requirements of said section 6 as a condition precedent to fixing liability against the principal for the compensation sought herein.
The Supreme Court in Seabury v. Arkansas Natural Gas Corporation, 171 La. 199, 130 So. 1, 2, referring to the comprehensive character of said section 6, said: "The language of the act seems to us to be clear and unambiguous and was intended to give the workman a direct action against the principal engaged in the business for which the workman was employed although such workman was employed by an independent or sub-contractor of such principal."
This interpretation has served as a guide to courts in cases subsequently arising under the referred to section and has uniformly been followed by them. Not one case has been cited to us that holds otherwise. Other cases on the subject are: Owers v. Louisiana Long Leaf Lumber Company, La. App., 14 So.2d 275; Taylor v. Willett et al., La. App., 14 So.2d 298; Lindsey v. White et al., La. App., 22 So.2d 689; Hollingsworth v. Crossett Lumber Company, 184 La. 6, 165 So. 311; Washington v. Sewerage and Water Board of New Orleans, La. App., 180 So. 199; Fletcher v. Texas Company et al., 14 La. App. 514, 124 So. 636; Clementine v. Ritchie, 1 La. App. 296, Id., 155 La. 263, 99 So. 213; Lutz v. Long-Bell Lumber Sales Corporation, La. App., 154 So. 645; Weaver v. Mutual Building Homestead Association, La. App., 195 So. 384.
It is not contended by appellants, nor could it well be, that the insurer's liability to plaintiff is not co-extensive with that of Hall. Obviously, it is.
For the reasons herein assigned, the judgment from which appealed is amended in the following respects, to-wit:
1. Payment of weekly compensation thereunder to plaintiff, individually, and for the use and benefit of the minor, Charlotte Ann Whitman, shall terminate as of November 11, 1948.
2. There is now judgment in favor of said minor awarding her compensation at the weekly rate of $13.71, beginning November 18, 1948, and continuing for 274 weeks, unless terminated in some legal manner prior to the expiration of that period. Such compensation payments shall be made to the mother of said minor in her capacity as natural tutrix.
3. The award for funeral expenses is reduced to $250.
And, except as amended in the mentioned respects, the judgment is affirmed with costs. *Page 119