LOTTINGER, Judge.
This is a suit ex delicto, seeking recovery for injuries resulting to the plaintiff when he was injured while unloading pipe from his truck on a barge to a drilling barge. From summary judgment in favor of the defendants, the plaintiff has appealed.
The record points out that the defendants are Rowan Drilling Company, the owner of a special purpose vessel and Drilling Rig # 27; Fidelity & Casualty Company of New York, the insurer of Rowan Drilling Company; and Alfred P. Cenac Towing Company of Houma, the alleged owner of a special purpose barge used in transporting men and equipment over navigable waters.
The plaintiff alleges that the accident in question occurred on June 22, 1966. At the time of the accident the plaintiff was employed by Rowan Drilling Company as a truck driver, and on the day of the accident he along with a helper left the pipeyard of the company with a load of drill pipe in Morgan City, Louisiana, at approximately 4:30 or 5:00 that afternoon en route to Paradis, Louisiana. Upon arriving in Paradis, Louisiana, at approximately 6:00 or 6:30 p. m., they drove the truck up onto a barge so that the truck along with the pipe could be transported to Rig # 27 which was located on a drilling location in Lake Des Allemands. The boat ride from the landing to the drill barge took approximately an hour and a half to two hours. This barge was towed to the drill site by a tug. Upon arriving at the drilling barge, the plaintiff and his helper left the truck and the barge on which it was located and went to have a bite to eat on the drill barge. En route to the rig, neither the plaintiff nor his helper lent any help to the tug skipper or the one deck hand that was on board. They did not do anything in connection with the operation of the tug or the barge. The tug and barge which was in tow were fastened so that there was a space of approximately one foot between the drill barge and the barge which carried the pipe truck. After finishing a short meal, the plaintiff, his helper, and the tool pusher commenced the unloading of the drill pipe from the truck.
The crews on the drill barge were busy with other matters and it was not possible to use a “stiff leg” which is a small crane aboard the drill barge as an aid in unloading the drill pipe. It was therefore necessary to place two by fours, approximately ten feet long, from the bed of the truck up to the deck of the drilling rig, which had an incline of about two feet, the truck being on the lower end. Approximately a dozen pieces of two by fours were used, the drill pipe being approximately thirty feet long. By the use of a push stick, which is a piece of pipe approximately three and a half feet long, with a V-type *85 of affair welded at one end and a “T” on the other end, the plaintiff and his helper were able by pushing or rolling each stem of drill pipe by use of the “V”ed end of the push stick up the ramp of two by fours. It was necessary for the plaintiff and his helper to each walk on a two by four while pushing a piece of pipe up this ramp. When the pipe stem reached the top of the ramp, the tool pusher took over and stacked or laid the pipe on the drill rig. The distance between the bed of the trailer truck and the pipe rack was approximately nine feet. These two by fours came off of the rig barge. Four or five pieces of pipe had been pushed up and placed on the rig barge. Four or five pieces of pipe had been pushed up and placed on the rig, and on walking backward after one stem of pipe had been rolled up, a two by four twisted under the plaintiff causing the plaintiff to fall into the area or open space between the two barges. The plaintiff stated that he had many times unloaded pipe from his truck to a drilling platform in this manner on land, but this was the first time he did such on water.
Rowell, plaintiff-appellant, appealed from the judgment in favor of all defendants, but states in his brief:
“Defendant Alfred P. Cenac Towing Company had a motion for summary judgment granted in its favor. Of this ruling, plaintiff does not complain, indeed plaintiff cannot complain because plaintiff does not have the information necessary to complain.”
We therefore take it, that plaintiff-appellant finds no error on the part of the Trial Court as far as granting the “motion for summary judgment” in favor of the defendant, Alfred P. Cenac Towing Company.
The plaintiff-appellant has assigned as errors that, the Lower Court erred in refusing plaintiff’s motion to compel full and complete answers to the interrogatories propounded; the Lower Court erred in refusing to grant a continuance on the hearing for summary judgment; and the Lower Court erred in granting summary judgment on behalf of all defendants. We shall now discuss whether the Trial Court erred in granting summary judgment as far as the defendant, Rowan Drilling Company and its insurer, Fidelity & Casualty Company of New York, are concerned.
The Trial Court did not favor us with written reasons for judgment as to the granting of the summary judgment, but inasmuch as this is a suit for a maritime tort, and the plaintiff has based its claim on the Jones Act, Maintenance and Cure, and unseaworthiness, we must necessarily assume that the Trial Judge did not find that the plaintiff fell within that class of individuals who are termed as “seamen.” Without question the facts in the record do point out that the plaintiff was not regularly employed on a vessel nor was he in regular contact with a vessel. His regular and normal employment was that of a truck driver, primarily in the oil field business, and principally as the driver of trucks delivering drill pipe.
We have concluded, and are of the opinion, that the criteria to qualify one to be a seaman under the Jones Act is not the same as to qualify one to be a seaman under the doctrine of unseaworthiness. In Braniff v. Jackson Ave.-Gretna Ferry, Inc., 280 F. 2d 523, the U. S. Fifth Circuit Court of Appeal held that to be a seaman under the Jones Act it was necessary that the injured man be assigned permanently to a particular vessel or several specified vessels, or to perform a substantial part of his work on the specific vessel or the several specific vessels. It further held that the relationship between the individual and a particular vessel or several specific vessels must not be sporadic and must be substantial in point of time and work. It would therefore seem that in the case at bar, the plaintiff-appellant does not fit the requirements of a seaman under the Jones Act.
*86 It must be remembered, however, that the plaintiff-appellant has also contended that the drilling barge was un-seaworthy. The question therefore arises, as to what are the requirements or prerequisites to be a seaman under the doctrine of “unseaworthiness.”
In Matherne v. Superior Oil Company, 207 F.Supp. 591 (1962), Judge Ellis of the U. S. District Court for the Eastern District of Louisiana had a most similar situation. There, the plaintiff, Matherne, was an employee of J. T. Construction Company, and he was ordered to deliver a load of drill pipe to Superior Oil Company. Matherne was a regular truck driver for J. T. Construction Company. It so happened, that part of the delivery trip to Superior’s drilling site was over water and Matherne and his truck load of pipe were placed aboard a barge and taken across navigable water to the delivery point. The plaintiff lent aid in the loading and unloading of the pipe. On the return trip Ma-therne apparently stepped out of his truck and fell off the barge, and was drowned. His surviving parents sued Superior Oil Company alleging unseaworthiness of the barge. The parents had further filed a suit in State District Court against the Construction Company seeking a reward under the Louisiana Workmen’s Compensation Law, to which suit Superior was not made a party. In the federal suit, defendant Superior moved to dismiss the action on the grounds that plaintiff’s sole remedy was under the Louisiana Workmen’s Compensation Law since it was alleged that Matherne and his immediate employer, J. T. Construction Company, were engaged in the trade business or occupation of Superior.
In denying the motion to dismiss, Judge Ellis held:
“Even though Matherne was a land-based worker and only temporarily on Superior’s barge, he had loaded and unloaded the barge and was engaged in furthering the purpose of a vessel on navigable water, namely, transporting a cargo of pipe, at the time of his death. ‘The work he was doing was maritime. * * * The non-maritime nature of the so-called regular work or duties is completely irrelevant.’ Flowers v. Travelers Insurance Co., [5 Cir., 258 F.2d 220, Cert, denied, 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582] at 221 of 258 F.2d. Matherne’s work was incident to performing the service of the ship and he was for all practical purposes, entitled to protection as a seaman. ‘It seems, therefore, that when a man is performing a function essential to maritime service on board a ship the fortuitous circumstances of his employment by the ship owner or a stevedoring contractor should not determine the measure of his rights.’ • Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. In short, Superior owed Matherne a duty of seaworthiness. Plaintiffs allege that Superior breached that duty.
“Where the injury is land based and wholly within state jurisdiction, a state statute may affect federally created rights, including the exclusion of an unseaworthiness claim. Grant Smith-Porter [Ship] Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321; Kent v. Shell Oil Co., 5 Cir., 286 F.2d 746. However, where federally created rights exist in an area in which there is concurrent jurisdiction, such as the twilight zone, state law may not affect them. Federal law is paramount in this area. Koninklyke Nederlandsche Stoomboat Maalschappy N. V., Royal Netherlands SS C. v. Strachan Shipping Co., 5 Cir., 1962, 301 F.2d 741, rehearing denied June 20, 1962. Leonard v. Lykes Brothers Steamship Co., E.D.La., 1962, - F.Supp. -. Hence the exclusive remedy provision of the Louisiana Workmen’s Compensation Law may not preclude an unseaworthiness claim against a third party in the twilight zone. In Alphonse Leonard v. Lykes Brothers Steamship Co., supra, Chief Judge Christenberry, Division A of this Court, relying on Royal Netherlands, *87 supra, held that even though plaintiff was clearly covered by the Louisiana Compensation Statute, the exclusive remedy provisions of that statute could not, due to the Extension of Admiralty Act, 46 U.S.C.A. § 740, deny plaintiff an unseaworthiness claim against a shipowner even when the shipowner and plaintiff’s employer were the same party.”
Though in Matherne v. Superior Oil Co., supra, the plaintiff was not suing the immediate employer, but rather the prime or principal contractor, the same results must follow if the employee’s immediate employer is also the owner of the vessel in question, as in the instant case. There is no question, but that under the interpretations of the Louisiana Compensation Statute, the exclusive remedy provisions apply to the principal as well as the immediate employer.
See Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852; Gant v. Jackson Brewing Co., La.App., 112 So.2d 767; Kent v. Shell Oil Co., 5 Cir., 286 F.2d 746.
Therefore, under the Matherne case, supra, it would seem that the criteria for being classified as a seaman under the doctrine of unseaworthiness is not the same as under the Jones Act. Defendant has questioned the applicability of the Ma-therne case to the case at bar inasmuch as the decision of Judge Ellis in the Ma-therne case was only concerned with a “motion to dismiss.” It can readily be seen by a reading of the decision in the Matherne case that any discussion as to whether Matherne was a seaman under the doctrine of unseaworthiness was part and parcel of deciding whether the case should be dismissed. It was necessary for the Court to determine that there was maritime jurisdiction in order to deny the motion to dismiss.
There is no question but that when the plaintiff in the instant case aided the loading of the drill pipe onto Drilling Rig #27 which was without question a vessel, he was furthering the purpose of that vessel. The primary purpose of Drilling Rig #27 was the drilling of oil and gas wells. This cannot be done without the use of drill pipe, and the plaintiff was supplying this vessel with that most important item, necessarily then he was furthering its purpose.
Since we are of the opinion that the Trial Judge was in error in granting the summary judgment, and this matter will be remanded for further proceedings, there is no need to discuss whether the Trial Judge abused his discretion as to not granting a continuance.
After a full reading of the record, we do not find that the Trial Judge abused his discretion in refusing to compel answers to the interrogatories, or in awarding damages. Under the provisions of LSA-C.C.P. Art. 1511, we do not feel that defendant, Rowan Drilling Company, refused to answer.
Therefore, for the above and foregoing reasons, we find that the Trial Court was in error in granting the summary judgment in favor of Rowan Drilling Company and Fidelity & Casualty Company. of New York. This case will therefore be remanded to the Trial Court for further proceedings.
Reversed and remanded.